# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS SALAS, JR., | Case No. 1:16-cv-00951-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | (Doc. 1) |

## I. INTRODUCTION

On July 1, 2016, Plaintiff Louis Salas, Jr. ("Plaintiff") filed a complaint under 42 U.S.C. §§405(g) and 1383(c) seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of the Social Security Administration. *See* https://www.ssa.gov/agency/commissioner.html (last visited by the court on February 27, 2017). She is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II. BACKGROUND

Plaintiff was born in 1975, completed the eleventh grade, and previously worked as a welder and a welder's helper. (Administrative Record ("AR") 18, 32, 33, 64.) On May 29, 2012, Plaintiff filed a claim for DIB and SSI payments, alleging disability beginning on July 1, 2007, due to arthritis in his back, severe back pain, and hearing loss. (AR 9, 64, 66, 74, 76, 84.)

**A. Relevant Medical Evidence[3]**

    **1. Clinica Sierra Vista**

In June 2011, Plaintiff presented with low back pain (chronic) and neck pain. (AR 396, 420.) His leg and arm strength were "5/5" and his sensation normal. (AR 420.) Radiological tests of Plaintiff's lumbar, thoracic, and cervical spine were performed on June 13, 2011. (AR 420, 426–27.) The x-ray of Plaintiff's lumbar spine was negative. (AR 425.) Plaintiff's thoracic spine was shown to have a mild right curvature and very mild anterior osteophytes present at multiple thoracic levels, with no focal vertebral abnormalities and no acute abnormality. (AR 424.) The x-ray of Plaintiff's cervical spine showed mild vertebral body spurring at C5 and C6, characterized as mild degenerative changes. (AR 423.) Plaintiff's primary care provider noted that Plaintiff's x-rays were negative except for small degenerative disc disease at his cervical spine, and referred Plaintiff to physical therapy. (AR 381, 419.) In July 2011, Plaintiff requested pain medication and was prescribed Tramadol. (AR 417.)

In August 2011, Plaintiff was seen for back pain. Plaintiff reported that he was doing physical therapy but it was "not helping much," and that the Tramadol was also "not much help." (AR 413.) The treating physician noted that Plaintiff never completed his lab work. (AR 413.) Plaintiff stated he was unable to work and wanted disability. (AR 413.) Plaintiff was referred to pain management and prescribed Flexeril and ES Tylenol. (AR 413.)

Plaintiff missed several appointments (*see* AR 407, 409–10) and did not return until July

---

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 6, 9.)
[3] As Plaintiff's assertion of error is limited to the ALJ's finding that Plaintiff did not meet or equal one of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 1.04 ("the Listings"), only evidence relevant to that argument is set forth below.

2012. Plaintiff complained of worsening back pain radiating to the arms. (AR 404.) Upon examination, Plaintiff had no lumbar spine tenderness and normal mobility and curvature. (AR 403.) Plaintiff was referred to pain management and a magnetic resonance imaging test ("MRI") of Plaintiff's lumbar and cervical spine was ordered. (AR 405.)

Plaintiff had an MRI of his cervical spine and of his lumbar spine in July 2012. (AR 385–88.) The cervical spine MRI showed degenerative changes and a 3-mm broad left paracentral foraminal disc osteophyte complex at C5–6 level, which indented the left aspect of the thecal sac, causing mild-to-moderate spinal canal stenosis and severe left neural foraminal narrowing with encroachment on the exiting left C6 nerve root. (AR 385–86, 391.) Plaintiff's lumbar spine MRI showed degenerative changes at the L1–2, L4–5, L5–S1 levels; severe right and left neural foraminal narrowing at the L4 and L5 level; and mild-to-moderate bilateral neural foraminal narrowing at the L5–S1 level. (AR 391.)

In August 2012, Plaintiff was diagnosed with cervical radiculopathy[4] and lumbar radiculopathy. (AR 402.) Plaintiff was rescheduled with pain management (after having missed two prior appointments, *see* AR 401), scheduled to see a neurosurgeon, and prescribed Tramadol and Neurontin. (AR 402.)

In December 2012, Plaintiff was diagnosed with backache, cervical radiculopathy, and lumbar radiculopathy. (AR 491.) Plaintiff's back pain was stable, and he rated his pain a "0" out of "10." (AR 491.) He was referred to a neurosurgeon, having missed a prior appointment. (AR 491.) In January 2013, Plaintiff had normal range of motion and muscle strength, with stability in all extremities and no pain. (AR 489.) Plaintiff continued to complain of lower back and neck pain in May 2013, but upon examination he had no lumbar spine tenderness and normal mobility and curvature. (AR 485.) No sensory loss was present. (AR 485.)

Plaintiff complained of sharp musculoskeletal pain in his hip in June 2013. (AR 482.) Decreased mobility, joint locking, limping, and weakness were observed. (AR 483.) Plaintiff's right hip had tenderness and mildly reduced range of motion. (AR 483.) An x-ray of Plaintiff's

---

[4] Radiculopathy denotes disease of the nerve roots. *Dorland's Illustrated Medical Dictionary* 1595 (31st ed. 2007) [hereinafter *Dorland's*].

right hip was ordered, and he was provided a referral to obtain a cane for walking. (AR 483.) Later that month, Plaintiff was referred to physical therapy for his right hip tenderness and moderate pain with motion. (AR 480.) Plaintiff's x-ray was negative. (AR 480.)

In August 2013, Plaintiff's back pain was stable. (AR 476.) An abnormal MRI was noted, and Plaintiff was referred to neurosurgery for his lumbar radiculopathy. (AR 478.) Plaintiff had tenderness in his lumbar spine in January 2014 but rated his pain a "0" out of "10." (AR 470.) His lower back pain was stable with no radiation and his symptoms were relieved by pain medication. (AR 470.)

### 2. Maria Gruszczynski, P.T.

On July 26, 2011, Plaintiff had his initial physical therapy evaluation. (AR 366–68.) Physical Therapist Gruszczynski noted that "there was no position of relief for this patient and he was unable to lay supine or prone. He has poor sitting posture that contributes to excessive biomechanical strain on the spine." (AR 367.) Ms. Gruszczynski noted that Plaintiff "will benefit from skilled intervention to decrease his pain, increase his [range of motion], increase his strength and increase his tolerance for functional activities. (AR 367.) Plaintiff attended another physical therapy session on August 3, 2011. (AR 364.) Plaintiff requested to be discharged after having completed only two of six scheduled physical therapy sessions because he was seeing a pain management specialist. (AR 364.)

On July 29, 2013, Plaintiff was again evaluated for physical therapy for pain in his groin region. (AR 497–99.) Ms. Gruszczynski recommended that Plaintiff attend physical therapy session two times a week for four weeks. (AR 499.) Ms. Gruszczynski discharged Plaintiff the following month because his progressive neurologic symptoms in his lumbar region made physical therapy services inappropriate. (AR 496.)

### 3. J.R. Grandhe, M.D.

On September 11, 2012, pain management specialist Dr. Grandhe evaluated Plaintiff. (AR 391–93.) Plaintiff complained of low back pain and radiating pain into his right hip with weakness in both lower extremities, and neck pain radiating into his midback. (AR 391.) Upon examination, Plaintiff had restricted motion in his cervical spine with mild tenderness. (AR 392.)

4

Radiating pain was present at C4–7. (AR 392.) Plaintiff's thoracic spine was within normal limits. (AR 392.) Plaintiff's lumbar spine showed restricted range of motion, tenderness, rigidity, and guarding, with radiating pain present at L2–4. (AR 392.) Plaintiff's sacroiliac joints were tender bilaterally with positive Gaenslen's and Patrick's signs. (AR 392.) He had decreased sensation in the upper extremities bilaterally and decreased sensation in the right lower extremity, with power in the upper and lower extremities at "4+/5." (AR 392.) Plaintiff's straight-leg test was "not intact." (AR 392.) Plaintiff was diagnosed with chronic low back pain secondary to a 3-mm bulge with stenosis at levels L1–2 and L4–S1 with MRI evidence; bilateral sacroiliac arthropathy[5]; chronic neck pain secondary to cervical degenerative disc disease with osteophytes at C6 and C7 with MRI evidence; and bilateral suprascapular neuralgia. (AR 392.) Dr. Grandhe noted that Plaintiff had no relief from physical therapy, and provided a TENS unit, requested authorization for a back brace, and noted that Plaintiff may benefit from bilateral sacroiliac, lumbar epidural steroid, and transforaminal cervical epidural steroid injections. (AR 392–93) Dr. Grandhe also advised Plaintiff to start a home therapy program, including mild massage, pain cream, and warm packs, and to continue his same pain medication prescribed by his primary care physician. (AR 393.)

Plaintiff presented to Dr. Grandhe again in January 2013 complaining of low back pain radiating into his left lower extremity to his toes with cramping that he rates at a "9" out of "10." (AR 452.) Plaintiff also complained of neck pain radiating into his bilateral shoulders rated "6" out of "10." (AR 452.) Plaintiff's cervical spine and lumbar spine were tender, with rigidity and guarding present. (AR 452.) Dr. Grandhe diagnosed Plaintiff with lumbar generative disc disease, chronic low back pain, and spinal stenosis. (AR 453.) Dr. Grandhe provided a back brace and recommended bilateral transforaminal lumbar epidural steroid injections. (AR 452.)

### 4. State Agency Physicians

On October 3, 2012, N. Shibuya, M.D., a state agency physician, assessed Plaintiff's physical residual functional capacity ("RFC")[6] and found that Plaintiff could (1) occasionally lift

---

[5] Arthropathy denotes any joint disease. *Dorland's*, *supra*, at 160.
[6] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule.

and/or carry 20 pounds and frequently 10 pounds; (2) stand for about six hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing/pulling with the upper and lower extremities, subject to the lift and carry restrictions. (AR 78–79.) Plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl. (AR 79.) Plaintiff had no manipulative or visual limitations, but had limited hearing in both ears and was to avoid even moderate exposure to noise. (AR 79–80.)

Upon reconsideration on February 4, 2013, another state agency physician, J. Mitchell, M.D., affirmed Dr. Shibuya's findings, except that Plaintiff could frequently balance and his overhead reaching was limited. (AR 106–08, 120–22.)

### 5. Adventist Health

In September 2013, Plaintiff presented at Adventist Health complaining of cervical/lumbar radiculopathy. (AR 467.) He was diagnosed with cervical and lumbar spondylosis[7], and provided with refills of Tramadol, Gabapentin, and Meloxicam. (AR 468.)

### 6. Teresa L. Mano, O.T.

On December 13, 2013, Occupational Therapist Mano evaluated Plaintiff at Community Outpatient Rehabilitation Center due to Plaintiff's "chronic back pain." (AR 431–36.) Ms. Mano completed a functional assessment of Plaintiff, and opined that he could bend forward while sitting or standing, or rotate while sitting or standing, only 1–5 % of an eight-hour workday. (AR 433.) Plaintiff could not crawl, kneel, or squat repetitively. (AR 434.) Ms. Mano opined that Plaintiff could sit and stand up to 33% of an eight-hour workday with breaks every 15–20 minutes. (AR 434.) Plaintiff could walk up to 33% of an eight-hour workday, but his limping would increase over time, and could balance and climb stairs only 1–5% of the workday. (AR 434.) Ms. Mano noted that Plaintiff had difficulty with prolonged standing and sitting and had increased sharp shooting pains with walking, standing, and lifting. (AR 434.)

---

Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

[7] Spondylosis denotes degenerative spinal changes due to osteoarthritis. *Dorland's*, *supra*, at 1780.

6

### 7. Salvador Gonzalez, M.D.

On December 20, 2013, treating physician Dr. Gonzalez completed a "Physical Capacities Evaluation" form. (AR 449–50.) Dr. Gonzalez opined that Plaintiff could occasionally lift and carry up to 10 pounds, and sit, stand, and walk for a total of 1 hour in an 8-hour work day. (AR 449.) Plaintiff must periodically alternate sitting and standing every 5–10 minutes. (AR 449.) Dr. Gonzalez limited Plaintiff to occasionally bending, squatting, kneeling, and stooping, with no crawling or climbing, and no use of feet for repetitive movements as in using and pulling of leg controls. (AR 449.) Despite the form's request for the basis for his conclusions regarding limitations, including objective findings verified by testing, Dr. Gonzalez wrote only that Plaintiff suffered from chronic back pain. (AR 450.)

### 8. LAGS Spine & Sportscare

Plaintiff presented to LAGS Spine & Sportscare in February 2014 complaining of pain in his shoulder, hip, knee, lumbar, lower back, neck, and legs. (AR 493–95.) Plaintiff indicated his pain was at a "1" out of "10" with medication, and a "10" out of "10" without medication. (AR 493.) Plaintiff was recommended to undergo an acupuncture assessment, a surgical block, an EMG test, a physical therapy evaluation, and a diagnostic ultrasound. (AR 495.)

### 9. Carlos Cordoba, M.D.

On March 14, 2014, Dr. Cordoba saw Plaintiff for a follow up appointment on his medications for his arthritis pain and depression. (AR 501–04.) Plaintiff denied joint pain, neck pain, back pain, upper or lower extremity pain, shoulder pain or numbness/tingling sensations. (AR 502.) Upon examination, Dr. Cordoba found Plaintiff's back appearance within normal limits and, with no bony tenderness or deformity, no abnormality to palpation, and normal mobility. (AR 503.) Plaintiff's cervical spine was unremarkable, with complete range of motion and no pain. (AR 503.) Motor function and sensory examination where within normal limits. (AR 503.)

Dr. Cordoba saw Plaintiff again on April 3, 2014, for depression, insomnia, and mild pain in his lumbosacral region. (AR 509.) Plaintiff was diagnosed with lumbago and instructed to continue to take medications for his pain. (AR 512.)

**10.  Dale Van Kirk, M.D.**

On July 8, 2014, following the administrative hearing, consultative orthopedic surgeon Dr. Van Kirk reviewed Plaintiff's medical records and conducted an orthopedic evaluation. (AR 518–29.)  Plaintiff complained of low back pain with radiation down both legs and neck pain with radiation down both arms. (AR 518.)  Dr. Van Kirk observed Plaintiff sat comfortably in a chair, got up from the chair and moved around the examination room, and got on and off the examination table without difficulty.  (AR 520.)  Plaintiff's Romberg test was abnormal, and Dr. Van Kirk noted that Plaintiff "waver[ed] and almost f[ell] after one second." (AR 520.)  Dr. Van Kirk noted that tandem walking with one foot in front of the other is "difficult" because Plaintiff's balance is "not so good." (AR 520.)  Plaintiff was able to squat only halfway down but could not continue due to lower back pain.  (AR 520.)  Dr. Van Kirk observed that Plaintiff had a normal heel/toe gait pattern and did not detect a limp.  (AR 520.)  Plaintiff had a cane with him that he reported using "on the right side to help with balance," "for confidence getting up and out of a chair," and "to decrease pain on the right side."  (AR 520.)

Dr. Van Kirk found that Plaintiff's range of motion in his cervical spine was within normal limits, with "generalized discomfort" in the mid-cervical spine and paracervical soft tissue.  (AR 520.)  Plaintiff had limited range of motion in his lumbar spine, with pain in his mid-lumbar spine area radiating into his waist area posteriorly and into the buttocks bilaterally. (AR 520.)  He had normal "5/5" grip strength and "5/5" motor strength, with normal sensation in both the upper and lower extremities bilaterally.  (AR 521–22.)  Plaintiff's straight leg raising test was "90/90" bilaterally in both the sitting and supine positions.  (AR 521.)  Dr. Van Kirk observed that Plaintiff's hip joints had full range of motion without pain or difficulty.  (AR 521.)  Dr. Van Kirk diagnosed Plaintiff with chronic cervical musculoligamentous strain/sprain associated with degenerative changes of the cervical spine, with osteophyte complex and moderate spinal canal stenosis at the C5–6 level, and severe left neural foraminal narrowing with the encroachment on the exiting left C6 nerve root.  (AR 522.)  Plaintiff was also diagnosed with chronic lumbosacral musculoligamentous strain/sprain associated with degenerative changes at the L1–S1 level, with severe right and mild left neural foraminal narrowing and bilateral neural foraminal opening at

L5–S1. (AR 522.)

Dr. Van Kirk assessed Plaintiff's physical RFC and opined that Plaintiff was limited to (1) standing or walking four cumulative hours out of an eight-hour day, during which time he should be permitted to sit down and rest periodically for a brief period (*i.e.*, 30 minutes) in the case of progressive neck or back pain; (2) sitting six cumulative hours out of an eight-hour day; (3) lifting and carrying 10 pounds frequently and 20 pounds occasionally; (4) occasional postural activities, with the exception of balancing, crouching, or crawling; and (5) avoiding working in extreme cold or extreme heat and at unprotected heights. (AR 523–526.) According to Dr. Van Kirk, Plaintiff's cane is "medically necessary" and should be used not only when Plaintiff is out and about, for uneven terrain, but also at home to help his balance and to decrease pain in his right paralumbar area. (AR 523.) Dr. Van Kirk found no limitations on manipulative activity, except that Plaintiff should not be required to work repetitively with his arms above his head. (AR 523.) Plaintiff could frequently operate foot controls with both feet and could frequently work around moving mechanical parts, around dust, odors, fumes, pulmonary irritants, and vibrations. (AR 528.) Plaintiff could operate a motor vehicle and work around loud noise. (AR 528.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on October 9, 2012, and again on reconsideration on February 13, 2013. (AR 152–56, 166–176.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 178–83.) At the hearing on June 3, 2014, Plaintiff appeared with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 28–59.)

A Vocational Expert ("VE") testified at the hearing that Plaintiff had past work as a combination welder, Dictionary of Operational Titles (DOT) code 819.384-010, which was medium exertional work, with a specific vocational preparation (SVP)[8] of 6, performed as heavy

---

[8] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id.*

or very heavy. (AR 52–53.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and with his past job. (AR 53.) The VE was also to assume this person is limited to lifting and carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking for six hours in an eight-hour workday; sitting for six hours in an eight-hour workday; limited to balancing frequently and to stooping, kneeling, crouching, crawling, climbing, and overhead reaching occasionally; and needs to avoid concentrated exposure to noise. (AR 53.) The VE testified that such a person could not perform Plaintiff's past relevant work, but could perform other light, unskilled work as a palletizer, DOT code 929.687-054; a garment sorter, DOT code 222.687-014; and a package operator, DOT code 920.685-082. (AR 53–54.) The ALJ asked a follow up question regarding the first hypothetical worker who was limited to lifting and carrying 10 pounds occasionally and less than 10 pounds frequently; standing and/or walking for two hours out of an eight-hour workday; sitting for six to eight hours with normal breaks; limited to balancing, stooping, kneeling, crouching, crawling, climbing, and overhead reaching occasionally; and needs to avoid concentrated exposure to noise. (AR 54.) The VE testified that this individual could not perform Plaintiff's past work, but could perform other sedentary, unskilled work as a document preparer, DOT code 249.587-018; a ampule sealer, DOT code 559.687-014; and a weight tester—paper, DOT code 539.485-010. (AR 54.)

The ALJ then proposed a third hypothetical, assuming the same individual in the second hypothetical but the individual was limited to lifting and carrying 10 pounds; standing one hour out of an eight-hour workday; sitting for one hour in a workday; and must alternate between sitting and standing every five minutes. (AR 54.) The VE testified that there would be no work such person could perform. (AR 54.) When asked by the ALJ to assume that person in the first and second hypothetical had the additional limitation that he would likely miss work at least two times per month, the VE testified that there would be no work such person could perform. (AR 54–55.)

**C.     The ALJ's Decision**

In a decision dated December 24, 2014, the ALJ found that Plaintiff was not disabled. (AR 9–19.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920.

10

(AR 26–31.)  The ALJ decided that Plaintiff had not engaged in substantial gainful activity since July 1, 2007, the alleged onset date.  (AR 11.)  The ALJ found that Plaintiff had the severe impairments of (1) lumbosacral degenerative disc disease and (2) cervical degenerative disc disease.  (AR 11.)  However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings").  (AR 11, 13–18.)  The ALJ determined that Plaintiff had the RFC

> to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and walk 4 hours in an 8-hour workday, and sit 6 hours in an 8-hour workday.  He must be permitted to sit periodically, when standing.  [Plaintiff] requires use of a cane.  He is limited to occasional balancing, stooping, kneeling, crouching, crawling, and climbing.  [Plaintiff] is precluded from engaging in repetitive overhead work.  He is unable to work in extremely cold or extremely damp environments.

(AR 13.)

The ALJ determined that, given his RFC, Plaintiff was unable to perform any past relevant work, but that Plaintiff was not disabled because he could perform a significant number of other jobs in the local and national economies, specifically document preparer, leaf tierer, and weight tester—paper.  (AR 18–19.)  In reaching his conclusions, the ALJ also determined that Plaintiff's subjective complaints were not entirely credible.  (AR 17–18.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on April 27, 2016.  (AR 1–4.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.981, 416.1481.

**D.     Plaintiff's Appeal**

On July 1, 2016, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision.  (Doc. 1.)  Plaintiff contends that the ALJ erred in finding that Plaintiff's impairments did not meet or equal 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 1.04A and/or 1.04C.  ("Listing 1.04A" and "Listing 1.04C").  (*See* Doc. 16 at 18–20.)

### III.     SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error."  *Tidwell v. Apfel*, 161 F.3d 599,

601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)–(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine

whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting him from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform his past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in Step Five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098–99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V. DISCUSSION

Plaintiff argues that the ALJ's finding that the he did not meet or equal Listing 1.04 is erroneous because the medical evidence shows he has degenerative disc disease and spinal stenosis, resulting in an impinged nerve root, confirmed by an MRI, with resulting pain, weakness and an inability to ambulate effectively. (Doc. 16 at 20.) Plaintiff also argues that the ALJ's Step Three findings are insufficient because they are "boilerplate" providing no analysis with regard to the findings. (*Id.*) Defendant counters that Plaintiff's use of a one-handed cane does not meet the requirement of ineffective ambulation for Listing 1.04C, and that Plaintiff has failed to show that he meets the other requirements for Listing 1.04. (Doc. 20 at 6–9.)

### A. Legal Standard

At the Third Step of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). *Tackett*, 180 F.3d at 1098. The Listings set forth by the Commissioner "define impairments that would prevent an adult, regardless of his

13

age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citations omitted) (emphasis in original). At Step Three of the sequential evaluation, Plaintiff bears the burden of demonstrating that his impairment meets or equals a Listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

For a claimant's impairment to meet a listing, it must, for a period of 12 continuous months, "meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan*, 493 U.S. at 530 (citations omitted) (emphasis in original); *see also Key v. Heckler*, 754 F.2d 1545, 1550 (9th Cir. 1985); 20 C.F.R. § 404.1525(d) ("To meet the requirements of a listing, [the claimant] must have a medically determinable impairment(s) that satisfies all of the criteria in the listing."); 20 C.F.R. pt. 404, subpt. P, app'x. 1 (stating the 12-month rule). Alternatively, a claimant can qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment by presenting "medical findings equal in severity to *all* the criteria for the one most similar impairment." *Sullivan*, 493 U.S. at 531 (citations omitted); *see also Marcia v. Sullivan*, 900 F.2d 172, 175–76 (9th Cir. 1990).

**B.     The ALJ Properly Determined that Plaintiff Did Not Meet or Equal the Listings at Step Three.**

**1.     The ALJ Did Not Provide an Inadequate Analysis at Step Three.**

As an initial matter, Plaintiff avers that the ALJ erred by providing a "boilerplate finding" that Plaintiff did not meet or equal the requirements of Listing 1.04. At Step Three of the sequential analysis, the ALJ stated "[t]he impairments listed in Appendix 1, Subpart B, CFR Part 404, which are most nearly applicable to [Plaintiff's] medically determinable impairments, particularly sections 1.04, have been reviewed and the criteria are not met or not medically equaled." (AR 13.)

In *Marcia*, the plaintiff argued that the ALJ's finding at Step Three was insufficient to show that the ALJ actually considered whether the medical evidence equaled a listed impairment. 900 F.2d at 176. The ALJ's finding as to medical equivalence was that "[t]he claimant has failed

14

to provide evidence of medically determinable impairments that meet or equal the Listings to Subpart P of Regulation 4 or the duration requirements of the Act . . . ." *Marcia*, 900 F.2d at 176. The Ninth Circuit found that this was insufficient and held that "the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Id.*

Subsequently, in *Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001), the Ninth Circuit held that an ALJ's discussion and evaluation of the evidence to support his conclusion was sufficient even if not discussed under the relevant section of the ALJ's decision. 236 F.3d at 513. *See also Gonzalez v. Sullivan*, 914 F.2d 1197, 1200–01 (9th Cir. 1990) (The ALJ is not required to state why a claimant fails to satisfy every criteria of the listing if they adequately summarize and evaluate the evidence.); *Duarte v. Comm'r of Soc. Sec.*, No. 1:15-cv-01860-SAB, 2017 WL 495645, at *5 (E.D. Cal. Feb. 6, 2017); *Guerra v. Astrue*, No. EDCV 09-02274-MAN, 2010 WL 5088774, at *6 (C.D. Cal. Dec. 7, 2010) ("An ALJ's lack of formal analysis and findings at Step Three . . . will not constitute reversible error when: the ALJ's subsequent discussion of the relevant medical evidence supports a conclusory finding; and with respect to equivalency, plaintiff fails to proffer a theory or evidence showing that his combined impairments equal a Listing."); *Harris v. Astrue*, No. CV 08–0831 JSW, 2009 WL 801347, at *7 (N.D. Cal. Mar. 25, 2009) (Even if not in the section expressly addressing Step Three, an ALJ does not err if he or she, for example, adequately discusses relevant "subjective symptoms, medical and treatment history, impressions and diagnosis from . . . physicians, as well as information about [the claimant's] daily activities and living situation."). The Ninth Circuit has also held that "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Kennedy v. Colvin*, 738 F.3d 1172, 1178 (9th Cir. 2013) (quoting *Burch*, 400 F.3d at 683).

Here, although the ALJ did not cite to or discuss the medical evidence at Step Three before determining Plaintiff did not meet the requirements of Listings 1.04, he gave an evaluation of the medical record between Steps Three and Four in support of the RFC determination. (AR 13–18.) *See Lewis*, 236 F.3d at 513. Further, although he mentions it in passing, Plaintiff did not

15

present a theory of how his impairments equal Listing 1.04. *See Kennedy*, 738 F.3d at 1178 (citing *Burch*, 400 F.3d at 683); *Lewis*, 236 F.3d at 514 (affirming where the ALJ did not discuss the claimant's impairments or compare them to any listing, but where the claimant "offered no theory" and "pointed to no evidence" supporting a finding that he met or equaled a listed impairment). *See also Bennett v. Colvin*, 609 Fed. Appx. 522 (9th Cir. 2015) ("[T]he ALJ was not required to explain why Bennett's impairments do not equal Listing 1.04, because Bennett did not present evidence in an effort to establish medical equivalence"). The Court therefore finds that the ALJ did not err at Step Three.

### 2. The ALJ Did Not Err in Finding that Plaintiff Did Not Meet or Equal Listing 1.04.

Plaintiff contends that the ALJ erred in finding that he did not meet or equal Listing 1.04. Listing 1.04 requires that the claimant have a spinal disorder "resulting in compromise of a nerve root . . . or the spinal cord[,]" along with

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app'x 1, § 1.04. Plaintiff contends that the record includes evidence

that he meets or equals Listings 1.04A and/or 1.04C.[9]

    a.    <u>Listing 1.04A</u>

As set forth above, Listing 1.04A requires evidence of nerve root compression characterized by (1) "neuro-anatomic distribution of pain," (2) "limitation of motion of the spine," (3) "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss," and, in the case of lower back impairments, which is the case here, (4) "positive straight-leg raising tests (both sitting and supine)." 20 C.F.R. Pt. 404, subpt. P, app. 1, § 1.04A.

Although there is evidence of Plaintiff's degenerative disc disease and spinal stenosis in the record (*see* AR 11, 385–86, 391, 453, 522), the medical evidence fails to support Plaintiff's contention that he met or equaled "all" of the requirements for Listing 1.04A for at least 12 continuous months during the relevant period. *See Zebley*, 493 U.S. at 530, 531. Although Plaintiff maintains that medical evidence demonstrates limitation of spinal motion and muscle weakness, many of medical records on which Plaintiff relies either provide only sporadic evidence of the existence of impaired range of motion and weakness or belie Plaintiff's argument entirely. With respect to Plaintiff's cervical spine, Plaintiff had restricted motion in September 2012 (AR 392), but in January 2013 Plaintiff had full range of motion (AR 489), and thereafter in March 2014 (AR 503) and in July 2014 (AR 520), as the ALJ noted (AR 15). While Plaintiff exhibited restricted range of motion in his lumbar spine in September 2012 (AR 14, 392), the ALJ observed that Plaintiff's lumbar spine had normal mobility in May 2013. (AR 14, 484.) In July 2014, Plaintiff again exhibited limited range of motion in his lumbar spine in July 2014 (AR 15, 520); however, as the ALJ noted, Plaintiff's straight-leg raising test at that time was "90/90" (normal) bilaterally in both the sitting and supine positions. (AR 15, 521.)

Similarly, in September 2012 Plaintiff had decreased sensation in the upper extremities bilaterally in the right lower extremity, but also had power in the upper and lower extremities at "4+/5" during that same examination. (AR 392.) By January 2013, Plaintiff had normal muscle

---

[9] Plaintiff does not appear to allege that she meets Listing 1.04B (*see* Doc. 16 at 19), nor has Plaintiff identified any part of the record that would support a finding of spinal arachnoiditis (chronic inflammation of the arachnoid lining in the spine, *see Dorland's, supra,* at 124) under Listing 1.04B.

17

strength and stability in all extremities (AR 489), and, as the ALJ observed, Plaintiff experienced no sensory loss in May 2013. (AR 14, 485.) Such normal findings with respect to Plaintiff's motor function, strength, and sensation continued in March 2014 (AR 503) and in July 2014, when, as the ALJ noted, consultative examiner Dr. Van Kirk observed that Plaintiff could get on and off of the examination table with no difficulty. (AR 15, 520–22.)

The remaining evidence on which Plaintiff relies to demonstrate limited spinal motion, muscle weakness, and sensory loss is his own subjective complaints of limitation (*see, e.g.,* AR 367, 391, 401, 431, 435, 452, 459, 467, 482–83), which is insufficient to satisfy his burden to demonstrate that he meets or medically equals Listing 1.04A. *See Raisor v. Comm'r of Soc. Sec.*, No. 2:16–cv–01500–CKD, 2017 WL 4270052, at *10 (E.D. Cal. Sept. 26, 2017). Thus, despite evidence in the record demonstrating that Plaintiff suffered from degenerative disc disease, Plaintiff has failed to show that, absent evidence of a positive straight-leg test and spinal motion limitation and muscle weakness for at least 12 continuous months during the relevant period, his impairment met or equaled Listing 1.04A. Accordingly, Plaintiff's argument in this regard is unavailing. *See Cattano v. Berryhill*, 686 F. App'x 408, 410 (9th Cir. 2017) (finding that the plaintiff did not meet all of the requirements for Listing 1.04, for disorders of the spine, because he was "unable to point to evidence that he has suffered motor loss, sensory or reflex loss, or positive straight-leg raising tests in the sitting and supine positions for twelve continuous months." (citing 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04A)).

      b.    <u>Listing 1.04C</u>

Plaintiff's assignment of error regarding Listing 1.04C fails for the same reason. Listing 1.04C requires, among other things, "chronic nonradicular pain and weakness" and the "inability to ambulate effectively, as defined in 1.00B2b." *Id.* § 1.04C. Under Listing 1.00B2b, an inability to ambulate effectively means

> an extreme limitation of the ability to walk; *i.e.,* an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.

18

*Id.* § 1.00B2b(1). Examples include "the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail." *Id.* § 1.00B2b(2).

While it is arguable that Plaintiff does not have the ability to ambulate effectively (*see, e.g.*, AR 13 (ALJ's RFC finding limiting Plaintiff to four cumulative hours of walking with periodic sitting and requiring use of a cane))[10], Plaintiff has not shown that he had "chronic nonradicular pain and *weakness*" for at least 12 continuous months during the relevant period. As set forth above, the medical evidence demonstrates that Plaintiff had normal leg strength in June 2011 (AR 420); power in the lower extremities at "4+/5" in September 2012 (AR 392); normal muscle strength in all extremities in January 2013 (AR 489); normal motor function in March 2014 (AR 503); and "5/5" motor strength in July 2014 (AR 522.) Further, at his examination by Dr. Van Kirk in July 2014, Plaintiff was observed to get up and out of a chair and get on and off of the examination table with no difficulty. (AR 15, 520.)

In sum, the evidence provides substantial support for the ALJ's conclusion that Plaintiff's spinal impairments did not meet or equal the requirements of Listing 1.04, and Plaintiff has not met his burden of showing otherwise. *See Sullivan*, 493 U.S. at 530; *Burch*, 400 F.3d at 683. Accordingly, the Court finds that the ALJ did not err in finding that the medical evidence failed to establish that Plaintiff's spinal impairments, alone or in combination, met or equaled Listing

---

[10] Defendant argues that, because the record does not reveal that Plaintiff uses "a hand-held assistive device(s) that limits the functioning of both upper extremities"—such as "a walker, two canes, or two crutches"—Plaintiff necessarily does not have an "inability to ambulate effectively" under Listing 1.00(B)(2)(b). (Doc. 20 at 6.) Defendant suggests that, because Plaintiff uses a one-handed cane rather than two canes (or a two-handed assistive device like a walker), this does not establish Plaintiff's "inability to ambulate effectively" under the Listing. (*Id.*) Defendant's focus on whether Plaintiff uses one or two canes, however, ignores that a "limited functioning of both upper extremities" is just one aspect of the Listing's "general[ ]" definition of "ineffective ambulation." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2b. The plain text of the Listing goes on to describe other limitations on ambulation—limitations separate and apart from needing to use two-handed assistive devices. *See id.* § 1.00B2b(2). If the use of two-handed assistive devices were always required to meet definition of "ineffective ambulation" under this Listing, the other components of the list would be "superfluous." *Nester v. Comm'r of Soc. Sec. Admin.*, No. 2:10-CV-01685 KJN, 2012 WL 468254, at *7 (E.D. Cal. Feb. 13, 2012). *See also Dobson v. Astrue*, 267 Fed. Appx. 610, 612 (9th Cir. 2008) (use of two-handed assistive device is not necessary to establish ineffective ambulation under § 1.00B2b). The Court therefore rejects this argument.

19

1.04.

## VI.   CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **December 8, 2017**                         /s/ *Sheila K. Oberto*
                                                            UNITED STATES MAGISTRATE JUDGE